WILLIAM BOWERS, APPELLEE, V. WILLIAM A. PIXLEY,
APPELLANT.

FILED FEBRUARY 13, 1924.    No. 22668.

Evidence: COLLATERAL FACTS: ADMISSIBILITY. "Where there is a
direct conflict in the evidence of the witnesses relating to a ma-
terial issue in the case, any collateral fact or circumstance tend-
ing in any reasonable degree to establish the probability or
improbability of the fact in issue is relevant evidence and
proper for the consideration of the jury." *Shepherd v. Lincoln
Traction Co.*, 79 Neb. 834.

APPEAL from the district court for Douglas county: CAR-
ROLL O. STAUFFER, JUDGE. *Reversed.*

*Montgomery, Hall & Young,* for appellant.

*R. T. Coffey, contra.*

Heard before MORRISSEY, C. J., LETTON and ROSE, JJ.,
ELDRED and REDICK, District Judges.

REDICK, District Judge.

The petition of plaintiff declared upon a loan to defendant
of the sum of $2,900; the answer was a general denial. Trial
to a jury resulted in a verdict and judgment for $1,607.89,
and defendant appeals.

The pleadings do not disclose the various contentions of
the parties, and it is necessary for a clear understanding of
the questions presented for review to state those contentions
as developed upon the trial. Plaintiff was in the employ of
the Trans-Mississippi Grain Company engaged in the buy-
ing and selling of grain on commission on the board of trade
at Chicago and elsewhere. Plaintiff claims that the de-
fendant, on and prior to the 10th day of April, 1920, was
indebted to the grain company in the sum of $2,900 as a
balance resulting from losses incurred by defendant on ac-
count of various margin transactions, and that plaintiff was
instructed by the company to secure cash from the defend-
ant to cover the said balance; that as the result of his efforts
he secured from defendant a check for $3,000, which he

agreed to hold for a few days; that after the lapse of such time he was instructed by the company to have the check certified, and, upon notifying defendant of that fact, defendant lodged with the company collateral amply sufficient to cover the check. The company, however, still insisted upon his procuring the cash from the defendant to cover the balance shown on the books of the company, and finally, about April 10, 1920, he took $3,400 of his own money, went to defendant and gave it to him, saying, "You might as well owe me as the company," and instructing him to pay it to the company and square his account, which was done. Plaintiff testified that he suggested the giving of a note for the amount due in six months, but no note, receipt or other written evidence was taken of the transaction. Plaintiff claims that the money was loaned defendant for the purpose of taking up the $3,000 check above referred to.

Defendant admits the receipt of the $3,400 and the payment thereof to the grain company, but denies that it was a loan to the defendant, and denies that he was indebted to the grain company in any sum, his contention regarding the transaction being as follows: That plaintiff, being an employee of the grain company, was not permitted under its rules to speculate upon the grain market; that, nevertheless, plaintiff in connection with three other employees did carry on a large number of trades upon the market in the names of five or more fictitious persons (a device for the purpose of concealing such trades from his employer), and, as bookkeeper, manipulated the accounts of defendant and other customers of the grain company by charging such accounts with losses resulting from such trades and crediting the fictitous accounts with any profits arising therefrom; that as a result of such operations plaintiff became indebted to the grain company in a sum exceeding $50,000, and that defendant's account was made to show a debit of $3,400, whereas in truth and in fact it should have shown a profit; that shortly before the $3,400 transaction, as a result of defendant's insistence upon a complete itemized statement of his account with the grain company, it was discovered by

the president that defendant had made a'profit of $500.60 which did not appear in his account, an account sales for which had been discovered in the desk of plaintiff while he was not present, and an audit of the accounts of plaintiff, especially regarding the transactions with defendant, was threatened or in progress; that defendant's check for $3,000 had been taken up by deposit of the collateral some months before April, 1920. With reference to the $3,400 defendant claims that the plaintiff came to him and stated that he had got in some trades with some other employees and he wanted to stop the check of the books, and gave the money to defendant, asking him to deposit it in defendant's account and give his check to the grain company for $3,400, and not let the president, Mr. Westbrook, know where the money came from. Instead of doing as requested, defendant took the cash to Mr. Westbrook, protesting that he was not indebted to the company, and that his account had been manipulated by plaintiff, and telling him Bowers had furnished the money, and received the collateral which had theretofore been deposited in lieu of the $3,000 check. Briefly stated, defendant's position is that he was not indebted to the grain company, and that the $3,400 was a gratuitous deposit for the benefit of the plaintiff to be used in balancing the account of defendant in order to stop the audit and prevent the discovery of plaintiff's manipulations of the accounts of defendant and other customers of the grain company. If the $500.60 had been credited to defendant's account, the apparent balance would have been reduced to $2,900 (round figures). Plaintiff gives no satisfactory explanation why he furnished $3,400 to settle the account.

While it has required some space to state the respective contentions of the parties, it will be noted that the question of fact for the determination of the jury was whether or not the transaction between the parties was a loan from plaintiff to defendant or a transaction purely for the benefit and accommodation of the plaintiff in which defendant had no interest.

Appellant assigns a large number of errors, but they may

be condensed as follows:   (1)    That the verdict is not sup-
ported by the evidence, for the reason that it is for one-half
of plaintiff's claim, whereas it should have been for the
whole amount or nothing; and (2) errors of law occurring
at the trial, consisting of the exclusion by the court of testi-
mony offered by defendant tending to show that at the time
of the transaction in question plaintiff was largely indebted
to the grain company on account of the prohibited transac-
tions, and that he had carried on those transactions in ficti-
tious names, manipulating the accounts as above stated,
and certain statements of plaintiff claimed to be admissions,
and the subsequent transfer by plaintiff to the grain com-
pany of a considerable amount of personal property in
satisfaction of his indebtedness to it.

The assignment attacking the verdict presents a very in-
teresting question.  Of course, defendant generally is in no
position   to complain that the verdict is for less than it
should be, but there was evidence of defendant tending to
show that a large number of debits in his account were in
connection with transactions not authorized by him, but
represented transactions of plaintiff on his own account, the
total of which is claimed by defendant to be *precisely* and
by plaintiff *about* one-half of plaintiff's claim.   Defendant
says the verdict was a mere compromise, while plaintiff con-
tends it is supported by the evidence, and if the jury found
that any of the charges in defendant's account represented
losses of plaintiff, they might be deducted from plaintiff's
claim, but, as the judgment must be reversed on other
grounds, we do not discuss this question.

The second assignment involves the exclusion of certain
evidence offered by defendant in corroboration of his testi-
mony, and here we think the learned trial judge erred.  The
question was whether the transaction was a loan.  The only
witnesses to it were plaintiff and defendant, and their tes-
timony is in direct conflict.  The jury were required to de-
termine which witness was telling the truth, and are entitled
to consider not only what the witnesses said, but the situa-
tion of the parties and all the circumstances in any way

connected with the transaction; in fact, the trial judge very properly instructed the jury that, "When the evidence of witnesses is conflicting it is your duty to reconcile the same consistently with the honesty of the witnesses where you can do so reasonably, but where you cannot, then you must determine from the evidence and circumstances and credibility of the witnesses, to whom you will give credit." Citation of authority is hardly necessary, but in *Shepherd v. Lincoln Traction Co.*, 79 Neb. 834 it was held:

"Where there is a direct conflict in the evidence of the witnesses relating to a material issue in the case, any collateral fact or circumstance tending in any reasonable degree to establish the probability or improbability of the fact in issue is relevant evidence and proper for the consideration of the jury."

The defendant testified to his belief that he was not indebted in any sum to the grain company, and at the time of the $3,400 transaction the plaintiff said that he had got in some trades with some other employees and that they were checking over his books and he wanted to stop them, and gave the money to defendant, asking him to deposit it in the bank to his own account and give his personal check to the grain company for $3,400, and not let Mr. Westbrook or anybody know where the money came from; that they discussed the uncredited item of $500.60, but plaintiff said he did not want to create any excitement about that (defendant's) account, that he wanted defendant to write the check for the full amount and that he (plaintiff) would stand the loss. Plaintiff denied having made any such statements, and testified in support of his position as hereinbefore outlined. As showing the probability of the truth of his evidence and in corroboration thereof, defendant offered to show that the plaintiff in connection with three other coemployees, contrary to the rules of the company, had been speculating upon the market, using a large number of fictitious names for the purpose of concealing such operations from the company; that plaintiff had manipulated the accounts of defendant and other customers of the grain com-

Bowers v. Pixley.

pany by charging them with losses which the plaintiff and other employees had sustained in their speculations; that on account of such transactions plaintiff was indebted to the grain company in excess of $50,000, and that he subsequently settled such account by transfer to the grain company of a large amount of personal property; that, in fact, defendant was not indebted to the grain company. Evidence of all these facts was excluded, except that defendant was permitted to testify as to admissions made to him personally by the plaintiff in regard to some of such matters, but defendant's testimony as to such admissions was categorically denied by the plaintiff, so that proof of them rested entirely upon evidence of the defendant, and the jury were compelled to determine the decisive issue of the case by a choice between conflicting statements of the parties without the aid of evidence of circumstances tending to discredit or weaken the evidence of plaintiff and strengthen that of defendant. We think proof of these facts would have a reasonable tendency to support the testimony of the defendant, and thus maintain his position as to the nature of the transaction of April 10, and that they were circumstances which the jury were entitled to have brought before them to enable them to properly determine which party was telling the truth. An illustration will make this clear: A. gives to B. $100, saying, "I went over to C.'s store and bought $100 worth of goods and had them charged to you; now, I wish you would take this $100 and go over and pay that bill, as I don't want to get myself in wrong with C." B. does as requested. Some months later A. sues B. for the $100, claiming it was a loan. B. denies it was a loan and testifies to the nature of the transaction and as to what A. said about it at the time. B. then called C. as a witness and offered to prove by C. that A. had made the purchases and had them charged to B. Can there be any question as to the relevancy and materiality of these facts? They tended to support B.'s version of the transaction and to show the probability of the truth of B.'s testimony. We think the supposititious case, though less complicated, is in true analogy with the one at

bar, and that it requires no further discussion to establish that the offered testimony should have been received.

REVERSED AND REMANDED.