BERRY v. DALMAN.

1. EVIDENCE—CIRCUMSTANTIAL EVIDENCE OF FACTS IN ISSUE.
    The court may and should receive evidence of all the circumstances attending an alleged transaction and of any collateral fact or circumstance tending in any reasonable degree to establish the probability or improbability of the fact in issue, where the evidence is conflicting.

2. SAME—ORAL AGREEMENT—SUBSEQUENT FACTS.
    The terms of an oral agreement, admittedly made when carload of lumber which defendants had purchased from plaintiffs and found to be defective was partially unloaded, but terms of which were in dispute, would not be shown by exhibits of certain boards later removed from the car as well as finished and partially finished carvings thereafter produced from the lumber, hence, such exhibits were inadmissible, as such exhibits related to matters not known to the parties at the time they made their agreement.

Appeal from Allegan; Smith (Raymond L.), J. Submitted October 16, 1952.  (Docket No. 10, Calendar No. 45,446.)  Decided January 8, 1953.

REFERENCES FOR POINTS IN HEADNOTES
[1] 20 Am Jur, Evidence §§ 271, 272, 1159.
[1, 2] 20 Am Jur, Evidence § 268.
[2] Generally as to real or demonstrative evidence, see 20 Am Jur, Evidence § 716 et seq.

Action by Paul B. Berry, doing business as Paul B. Berry Lumber Company, against Ernest Dalman and another, doing business as Imperial Carving Company, for balance of purchase price of lumber. Verdict and judgment for plaintiff. Defendants appeal. Affirmed.

*Arthur R. Sherk* (*Stanley Cheff,* of counsel), for plaintiff.

*Leo W. Hoffman,* for defendants.

ADAMS, J. Plaintiff sold a carload of lumber to the defendants. One-half the purchase price was paid and this action was brought to recover the balance, the defendants having refused payment claiming that under the terms of an oral agreement made subsequent to delivery they owed nothing. Plaintiff recovered judgment for the remaining amount of the original purchase order and defendants appeal claiming error in the exclusion of certain evidence.

Most of the facts are not in dispute. On November 22, 1949, plaintiff offered to sell and defendants agreed to purchase a carload of lumber of specific size, quality and price. Plaintiff was unable to deliver that particular lumber and on May 29, 1950, defendants agreed to accept other lumber in lieu of that originally ordered. This lumber was then shipped to Cairo, Illinois, for kiln drying and from there to the defendants' place of business in Allegan where it arrived the latter part of July, 1950.

After unloading approximately 1,000 feet of the carload lot, defendants found the lumber to be "the worst looking car of 8 quarter gum we received in our plant in all the years I have been there. The lumber was twisted and warped and full of checks." Ernest Dalman, one of the defendants, immediately called the plaintiff by telephone and plaintiff went

to the defendants' place of business on or about the first of August where he and Ernest Dalman inspected that portion of the lumber then unloaded. A discussion between the parties followed and an agreement was reached with reference to the price and disposition of the lumber. While the parties agree that the inspection disclosed the lumber to be twisted, warped and full of checks, testimony as to the terms of the agreement reached between the parties on that day is conflicting and those terms became the only issue submitted to the jury for determination.

Plaintiff claimed the parties' agreed that the lumber should be unloaded, again inspected and a price agreed upon before it was used. Defendants, on the other hand, claimed that it was agreed that defendants should pay one-half of the original purchase price, then cut up and use the lumber and pay any balance due if, in the judgment of the defendant Ernest Dalman, they were able to use more than one-half of it.

Shortly after this meeting the plaintiff called at the defendants' place of business in the absence of the defendants, checked the lumber and found that it was all unloaded. Later he tried to call the defendants by telephone and wrote twice, although receipt of one of the letters was denied by defendants. In the meantime defendants cut up all of the lumber and used what they could in their business. Finally, on November 21, 1950, defendants wrote to plaintiff stating that they felt the payment already made was a fair settlement of their account. Plaintiff then instituted this suit.

Opportunity was afforded the parties to submit all available testimony that might be helpful in establishing the terms of the claimed agreement, including conversation and correspondence of the parties. Much testimony was offered in respect to the

condition of the lumber that had been unloaded at the time they met. Expert testimony was received in reference to the cause of the defects in the lumber. Boards were shown to the jury and the usable portions marked. Defendants testified that they were unable to use more than half of the lumber received.

However, when defendants attempted to introduce in evidence as exhibits certain boards removed from the car after the date of the alleged agreement, as well as finished and partially finished carvings produced from the lumber after that date, the court, upon objection, refused to admit them, saying:

"What the parties discovered later concerning the condition of the lumber had no influence upon any new agreement. Neither party purported to know what the condition of the rest of the lumber was on August 3d. It was with the knowledge at hand that they were dealing when they arrived at some new agreement."

Where evidence is conflicting, the court may and should receive evidence of all the circumstances attending the alleged transaction (*Sandbo* v. *Sandbo,* 67 SD 157 [290 NW 325]) and of any collateral fact or circumstance tending in any reasonable degree to establish the probability or improbability of the fact in issue (*Bowers* v. *Pixley,* 111 Neb 698 [197 NW 410]). Here the jury was solely concerned in finding the terms of an oral agreement. Both parties concede that there was a meeting of the minds, though they disagree as to terms. Under such circumstances, any evidence tending to show what was in their minds or known to them at that time concerning the subject matter of the agreement would be material, but facts not known to either party when the disputed agreement was made would be of no value in determining the state of mind of the parties and would, therefore, not be admissible in evidence.

The testimony received gave the jury ample opportunity to understand and evaluate the circumstances surrounding the making of the disputed oral agreement. They saw and listened to all parties. They were informed of every circumstance known to either party at the time of the meeting, including the condition of the unloaded lumber. From that testimony they were in a position to determine what they believed to be the terms of the agreement and to render an exact verdict for either party depending upon that finding.

The terms of the agreement could not have been influenced or affected by anything discovered by either of the parties at a later date. The excluded evidence would, at most, be indicative of whether the agreement was advantageous to either or both of the parties, but it could be of no assistance in determining what constituted their earlier agreement.

We are of the opinion that the trial judge acted properly in excluding the exhibits.

The judgment of the trial court is affirmed, costs to appellees.

DETHMERS, C. J., and BUTZEL, CARR, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.